UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LEROY WALKER,                    )
                                 )
            Plaintiff,           )
                                 )
    vs.                          )          Case No. 2:12CV00026 ERW
                                 )
GARY CAMPBELL, et al.,           )
                                 )
            Defendants.          )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Corizon, Inc. (f/k/a Correctional Medical

Services, Inc.), Tomas Cabrera, Thomas Bredeman, Jill Perkins, Barbara Dallas, Carl Bynum, Gary

Campbell, and Dennece Ward's Motion for Summary Judgment [ECF No. 24].

## I.    STATEMENT OF UNDISPUTED OR UNCONTROVERTED FACTS

Based on Defendants' Statement of Undisputed Material Facts [ECF No. 26], Plaintiff's

Statement of Controverted Material Facts and/or Material Facts in Dispute [ECF No. 40], and

Defendants' Response to Plaintiff's Statement of Controverted Material Facts [ECF No. 45], the

following facts are undisputed, or have not been specifically controverted pursuant to E.D. Mo. L.R.

7-4.01(E).

Plaintiff Leroy Walker is an inmate in the custody of the Missouri Department of Corrections.

During the time period at issue, Plaintiff was confined at the Northeast Correctional Center (NCC)

in Bowling Green, Missouri.  On September 7, 2011, Plaintiff injured his left ankle while jumping

off his top bunk.  Plaintiff alleges that when he arrived at NCC's medical department, he saw

Defendant Dennece Ward, a nurse at NCC.[1]  At the examination, Plaintiff stated he "twisted" his ankle and fell, and he claims he directed medical personnel to x-ray his ankle.[2]  Plaintiff's handwritten notes state Defendant Ward told him that he had a "bad spra[in]," and she had worked twelve-hour shifts having suffered more severe injuries.  At the medical examination, Plaintiff received crutches, an Ace wrap, and Tylenol.  He was also instructed to restrict his activity and sports for one month; he did not receive an x-ray at that time.

On September 12, 2011, Plaintiff self-declared an emergency and was examined by Defendant Ward.  Defendant Ward noted Plaintiff had "gross edema of left foot," ambulated by himself, and "tr[ied] to walk on crut[c]hes."  [ECF No. 26-2 at 5].  The same day, she took Plaintiff to see Defendant Tomas Cabrera, an "independent contract physician" at NCC.[3]  [ECF No. 30 at ¶ 1].  Defendant Cabrera ordered an x-ray, an anti-inflammatory medication, a wheelchair, and a lower bunk.  He also instructed Plaintiff to elevate his left foot and apply ice, and he ordered that Plaintiff not perform any work for two weeks.  Plaintiff's handwritten notes indicate he was not able to attend meals on September 7, September 9, and September 12 of 2011.[4]  [ECF No. 40-6 at 1].

---

[1]The parties dispute whether Plaintiff saw Defendant Ward or Melanie Powell, another NCC nurse, on September 7, 2011.  Plaintiff's medical records state Melanie Powell performed the examination.  [ECF No. 26-2 at 3].  However, Plaintiff's handwritten notes, dated September 7, 2011, state he was examined by Defendant Ward. [ECF No. 40-6 at 1].  Additionally, in his deposition, Plaintiff averred that although Powell may have been present during the examination, she was merely training, and Plaintiff only spoke with Defendant Ward. [ECF No. 26-1 at 33:1-19].

[2]Plaintiff's medical records indicate he actually requested an x-ray the following day, September 8, 2011, when he saw another nurse, Tonya Seddon. [ECF No. 26-2 at 4].

[3]The response to Defendant's administrative grievance additionally identifies Defendant Cabrera as "Medical Director." [ECF No. 40-4 at 2].

[4]Plaintiff's notes make no entries for the intervening dates of September 8, September 10, and September 11 of 2011.

The following day, Plaintiff received an x-ray. The parties dispute the date on which the x-ray results were evaluated. Defendants claim Defendant Cabrera evaluated the x-rays on September 13, 2011, but Plaintiff notes the medical records state, "Images are not submitted for interpretation until 9/20/11," and the report receipt date is September 22, 2011. [ECF No. 26-2 at 7]. Regardless, the record is clear that on September 13, 2011, Defendant Cabrera concluded – by reviewing the x-ray results or otherwise – Plaintiff "sustained a fracture on his distal third of his fibula, displaced and slightly angulated." [ECF No. 26-2 at 7]. Also on September 13, 2011, Defendant Cabrera submitted a referral request, so that Plaintiff could see Dr. Ben Jolly, an orthopedic specialist at the Audrain Medical Center in Mexico, Missouri. The referral request was approved the same day.

Plaintiff saw Dr. Jolly on September 16, 2011. Dr. Jolly's notes read as follows:

> PT WITH SYNDESMOTIC AND DELTOID LIGAMENT TEAR AND FX FIBULA (MESSONURENE FX) NEED LIGAMENT REPAIR NEXT WEEK!!! WILL SCHEDULE NEXT WEEK AS SOON AS POSSIBLE, NEEDS DONE TODAY.

[ECF No. 26-2 at 8]. Dr. Jolly recommended surgical ligament repair in the form of a "left distal fibular ligament stabilization with tightrope." [ECF No. 26-2 at 9]. Plaintiff contends Dr. Jolly attempted to have the proposed surgery approved that day, but a nurse at Dr. Jolly's office reported the surgery was denied via telephone by Defendant Jill Perkins, a registered nurse serving as the Health Services Administrator at NCC. Plaintiff alleges the nurse at Dr. Jolly's office "advised that [Defendant] Perkins would not authorize an emergency surgery, that it needed to be scheduled in the next week or further in the future to avoid extra charges[.]" [ECF No. 40 at 20-21]. Ultimately, Defendant Cabrera submitted a referral request for the recommended surgery.

On September 19, 2011, Plaintiff filed an Informal Resolution Request (IRR) with the Missouri Department of Corrections. He stated that he needed immediate surgery on his left ankle. Additionally, he stated, "The whole process is taking too long. It has been thirteen days already, and

I should have been treated when I went to the doctor in Mexico, Mo. on 9-16-11. The doctor told me it needed to be taken care of now, if he waits too long it won't be right, ever!" [ECF No. 40-3 at 1]. Dr. Jolly's recommended surgery was approved the same day by Defendant Carl Bynum, a physician at NCC. Dr. Jolly performed the surgery on September 20, 2011 at Audrain Medical Center.

The parties dispute the appearance of Plaintiff's injuries from the time he jumped from his bunk to his surgery. Defendant Cabrera avers the "fracture was not evident upon a visual inspection of the left ankle and could only be determined by interpreting the x-ray results." [ECF No. 30 at ¶ 10]. However, Plaintiff has submitted affidavits from two of his fellow inmates that describe the condition of Plaintiff's injuries in the time period leading up to his surgery. Affiant Mark Minicky states, "[Plaintiff] expressed that he was in excruciating pain, he could not move his foot, ambulate unassisted, either with the help of someone or by use of auxiliary aids, and his foot was dangling." [ECF No. 40-19 at ¶ 4]. Similarly, affiant Randy Belcher states, "It was obvious then that he needed emergent surgical intervention because you could see that the heel of his foot was not even connected to his leg anymore with that corresponding ligament and his foot just hung there." [ECF No. 40-18 at ¶ 7].

Following the surgery, Plaintiff received crutches, a surgical boot on his left leg, and a wheelchair for long distances.[5] The same day as his surgery, Plaintiff returned to NCC, where he was monitored in the transitional care unit (TCU). He was given prescriptions for ibuprofen and Tylenol with codeine elixir.[6] That evening, a nurse administered two doses of Tylenol with codeine.

---

[5]The record does not clearly state the source of these provisions.

[6]The record is not clear as to whether Dr. Jolly or Dr. Kendis Archer, an NCC physician, prescribed these medications. However, as Plaintiff has named neither of these physicians as defendants, the distinction is immaterial.

Plaintiff alleges, however, that after those two doses, medical staff denied him any more pain medication and falsified his medical records to reflect he no longer needed it. Specifically, Plaintiff contends Defendant Barbara Dallas, a nurse at NCC, lied to other medical staff by stating Plaintiff no longer required pain medication, even though Plaintiff rated his pain at "ten" on a scale of one to ten. Plaintiff also asserts Defendant Dallas improperly discontinued his prescriptions,[7] falsified his records to effect premature discharge from TCU, and refused to clean his bloody leg and foot. Dated September 21, 2011, Defendant Dallas's notes state, *inter alia*, Plaintiff "states has throbbing pain left lat ankle, rates pain a '5', states is bearable." [ECF No. 26-2 at 15]. Additionally, she wrote Plaintiff

> has bulky acewrap in place to left foot and lower leg, has moderate amt sanguinous drainage noted on lateral side of ankle and lower leg, appearing through ABD; ABD removed; 4x4 gauze placed over area of drainage, covered w/folded ABD, secured w/kling; pt instructed re: importance of keeping surgical dressing intact to decrease pot [sic] for infection[.]

[ECF No. 26-2 at 16]. Defendant Cabrera also saw Plaintiff on September 21, 2011. Plaintiff's handwritten notes state, "All [Defendant Cabrera] sa[id] is this medical boot cost five hundred dollars, like he paid for it himself." [ECF No. 40-6 at 3]. Plaintiff was discharged from TCU on September 21, 2011 with a wheel chair, crutches, and air walker boot.

On October 28, 2011, Defendant Perkins responded to Plaintiff's IRR. She wrote,

> I understand that you feel that there was an inappropriate time lapse getting your fracture repaired. There are many other things that are taken into consideration when scheduling medical outcounts. The availability of the specialist is the first thing that is reviewed, they have other patients as well.

[ECF No. 40-3 at 2].

---

[7]Plaintiff asserts Defendant Dallas was fired for stealing narcotics from inmates and falsely recording that she had administered those medications to her patients. Nothing in the record supports this assertion.

On November 4, 2011, Dr. Jolly examined Plaintiff, noting Plaintiff was "healing well," and advising Plaintiff to continue wearing the surgical boot for three weeks. [ECF No. 26-2 at 17]. Plaintiff's medical records also reflect an examination by Defendant Cabrera on November 17, 2011. Plaintiff's handwritten notes state that, during that visit, Defendant Cabrera told Plaintiff he was "not concerned with [Plaintiff's] comfort or pain." [ECF No. 40-6 at 4].

Dr. Jolly examined Plaintiff again on December 12, 2011. Satisfied with the results of Plaintiff's surgery, Dr. Jolly advised he only needed to see Plaintiff as needed. Additionally, the following day, Plaintiff told Defendant Cabrera that Dr. Jolly had released Plaintiff from his care.

Plaintiff alleges he continues to suffer from his injuries. Specifically, he contends he suffers from nerve pain, for which Defendants have denied treatment. The affiants describe Plaintiff's purported nerve pain as self evident; Belcher states Plaintiff "still expresses severe pain and . . . he suffers in constant nerve pain, his leg and foot is [sic] constantly on fire and he make[s] involuntary, painful jerking movements when the nerves involuntarily fire." [ECF No. 40-18 at ¶ 6]. Minicky makes similar averments in his affidavit, describing Plaintiff's pain as "obvious" and likening Plaintiff's "jerking movements" to "an electric bolt shocking someone." [ECF No. 40-19 at ¶ 6].

Plaintiff filed suit on April 12, 2012, alleging his right of freedom from cruel and unusual punishment was violated pursuant to the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983. Aside from Defendants Ward, Cabrera, Perkins, and Dallas, Plaintiff named as Defendants the following individuals: (1) Defendant Thomas Bredeman, a physician and "Associate Regional Medical Director" at NCC, [ECF No. 40-5 at 2], who Plaintiff alleges knowingly disregarded the actions of his "subordinates," and (2) Defendant Gary Campbell, a physician at NCC, who Plaintiff alleges knowingly disregarded Plaintiff's need for healthcare. Finally, Plaintiff named Defendant Corizon, Inc. (Corizon), which has a contractual agreement with the State of Missouri to provide

medical services to offenders in the Missouri Department of Corrections. Plaintiff alleges Defendant Corizon maintains unconstitutional policies, customs, and practices that deprive inmates of medical care solely on the basis of cost. In sum, Plaintiff alleges Defendants were deliberately indifferent to his broken bone, and to his purported ongoing nerve pain.

## II.   SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment only if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By definition, material facts "might affect the outcome of the suit under the governing law," and a genuine dispute of material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The moving party bears the initial burden of proof in establishing "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The moving party must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence and specific facts that demonstrate a genuine dispute on that issue. *Anderson*, 477 U.S. at 250. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine dispute of

material fact exists. Fed. R. Civ. P. 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must demonstrate sufficient favorable evidence that could enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.* The Court must view the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## III.    DISCUSSION

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Jones v. Minn. Dept. of Corrs.*, 512 F.3d 478, 482 (8th Cir. 2008). "Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of [a] known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). Prison medical staff may exhibit deliberate indifference by failing to respond to a prisoner's serious medical needs. *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." *Roe v. Crawford*, 514 F.3d 789, 798 (8th Cir. 2008) (quoting *Hartsfield v. Colburn*, 491 F.3d 394, 396-97 (8th Cir. 2007)). A medical need is "objectively serious" if it has either been diagnosed by a physician as requiring treatment or it is so obvious that even a "layperson would easily recognize the necessity for a doctor's attention." *Jones v. Minn. Dept. of Corrs.*, 512 F.3d 478, 481 (8th Cir. 2008) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). To establish a constitutional violation, a plaintiff must prove more than gross negligence and more than "mere disagreement with treatment decisions." *Id.* at 482. Rather, "a plaintiff must demonstrate the [defendant] actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene Cnty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006). Actual knowledge "may be inferred from circumstantial evidence or from the very fact that the risk was obvious." *Jones*, 512 F.3d at 482.

Defendants argue they are entitled to summary judgment in their favor, because (1) no medical evidence exists to establish a detrimental effect of the alleged delay in treatment, (2) Plaintiff cannot establish Defendants acted with deliberate indifference, and (3) Plaintiff cannot prove Defendant Corizon maintained unconstitutional policies, customs, or practices.

### A.    *Alleged Delay in Treatment*

Defendants contend the Court should grant their Motion, because Plaintiff cannot establish a detrimental effect of the alleged delay in treatment. Defendants maintain Plaintiff has failed to offer any verifying medical evidence that the thirteen-day delay between the injury and the surgery caused him harm. Plaintiff responds he suffered an objectively serious medical condition that is

obvious to a layperson, and he therefore need not offer verifying medical evidence to go forward with his suit.

A serious medical need is one that is either obvious to a layperson or supported by medical evidence. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). When an inmate alleges a delay in medical treatment amounts to an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (internal quotations omitted and emphasis in original). Thus, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]" *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (affirming grant of summary judgment where inmate failed to offer medical evidence that delay in provision of sunglasses had any adverse effect on his prognosis) (internal quotations omitted); *Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006).

The Court acknowledges Plaintiff has failed to offer verifying medical evidence establishing he suffered any detrimental effects resulting from the approximately two-week delay in surgery. Although Plaintiff alleges he suffered permanent nerve damage to his left foot, he has failed to specifically refer to any medical evidence to support his position.[8] As Defendants suggest, Plaintiff admits none of his doctors have told him he has nerve damage, and Dr. Jolly indicated his satisfaction with the results of Plaintiff's surgery.

Defendants contend Plaintiff's failure to set forth such verifying medical evidence precludes Plaintiff's case. This position, however, overlooks a critical distinction. That is, when an inmate

---

[8]Plaintiff contends he has sought medical treatment for his alleged nerve damage, but Defendants have denied him access to health care for this purpose.

solely alleges a delay in treatment had adverse effects, the inmate must set forth verifying medical evidence; however, an inmate need not offer such evidence when the need for medical attention is obvious to a layperson. *Hartsfield*, 371 F.3d at 457 (inmate did not need to set forth verifying medical evidence where "he suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating."). Indeed, the Eighth Circuit has "repeatedly emphasized that the need or the deprivation must be *either obvious to the layperson* or supported by medical evidence, like a physician's diagnosis." *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999) (internal quotations omitted and emphasis in original). Simply put, where a need for medical attention would be obvious to a layperson, submission of verifying medical evidence is unnecessary. *Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011).

In the instant case, Plaintiff does not merely allege a delay in medical care as a constitutional deprivation. Rather, Plaintiff alleges Defendants were deliberately indifferent to an obviously serious medical need – a broken bone. Genuine disputes of material fact remain as to whether Plaintiff suffered an injury obvious to a layperson. That is, while Defendant Cabrera states "[t]he fracture was not evident upon a visual inspection of the left ankle and could only be determined by interpreting the x-ray results," [ECF No. 30 at ¶ 10], Plaintiff offers affidavits from two inmates, stating his foot "was dangling," [ECF No. 40-19 at ¶ 4], and "just hung there." [ECF No. 40-18 at ¶ 7]. Likewise, the affidavits state Plaintiff's leg currently makes involuntary jerking movements that, coupled with Plaintiff's expressions of pain, render his alleged nerve pain obvious to a layperson. Viewing the record in the light most favorable to Plaintiff, this evidence creates a genuine dispute of material fact as to whether Plaintiff suffered and continues to suffer medical conditions obvious to a layperson. Thus, Defendants have not met their burden in establishing Plaintiff lacked a medical need obvious to a layperson, and the Court cannot grant summary judgment on the simple

basis that Plaintiff has failed to offer verifying medical evidence of his alleged nerve damage.[9]

Accordingly, the Court turns to whether Defendants have met their burden of demonstrating the

absence of any evidence of deliberate indifference to Plaintiff's alleged medical conditions..

### B.     *Deliberate Indifference*

Defendants contend Plaintiff has failed to set forth any evidence from which a reasonable jury

could find deliberate indifference.  Deliberate indifference requires knowledge of a substantial risk

of serious harm and failure to take reasonable measures to abate such risk.  *Coleman v. Rahija*, 114

F.3d 778, 787 (8th Cir. 1997).  "A few hours' delay in receiving medical care for emergency needs

such as broken bones and bleeding cuts may constitute deliberate indifference."  *Harris v. Coweta*

*Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994).  That said, "[w]here a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant

to second guess medical judgments and to constitutionalize claims which sound in tort law."

*Marksberry v. O'Dea*, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (quoting

*Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).

### 1.     *Defendant Ward*

Defendant Ward maintains she is entitled to judgment as a matter of law, because she

undisputedly examined Plaintiff on September 12, 2011 and took him to see Defendant Cabrera the

same day for further evaluation.  Defendant Ward contends Plaintiff's medical records do not reflect

any other evaluation, care or treatment by her regarding Plaintiff's injury.  Additionally, Defendant

---

[9]In fact, Defendants summarily dismiss the affidavits offered by Plaintiff as "disputed but immaterial," because "[t]he salient point for summary judgment is that Plaintiff has not offered any medical evidence to establish that there was any detrimental effect from his surgery being on September 20, 2011, and that Plaintiff has not offered any medical evidence to show that further treatment and/or aids were necessary or that the failure to provide the same constituted deliberate indifference." [ECF No. 45 at ¶ 61].

Ward asserts she did not know about Plaintiff's broken bone until the following day, when the x-rays were performed, and she therefore lacked the actual knowledge required to establish deliberate indifference.

In response, Plaintiff contends he not only saw Defendant Ward on September 12, 2011, but also on September 7, 2011. Plaintiff asserts that, on this date, Defendant Ward described Plaintiff's injury as a "bad sprain," and stated she had worked twelve-hour shifts having suffered more severe injuries. Additionally, Plaintiff contends he saw Defendant Ward several times between September 7 and September 12, but Defendant Ward denied him treatment and refused to document these encounters. Finally, Plaintiff argues he saw Defendant Ward post-surgery, on September 26, 2011, December 12, 2011, and December 14, 2011.

The Court finds Defendant Ward is not entitled to summary judgment. As an initial matter, based on Plaintiff's verified complaint, affidavit, handwritten notes, and deposition testimony, Plaintiff has created a dispute of fact as to whether Defendant Ward examined him on September 7, 2011. Defendant Ward contends this issue is immaterial, because, regardless of who conducted the examination, Plaintiff undisputedly received an Ace wrap, crutches, aspirin, and an ice bag at that time.

The flaw in Defendant Ward's argument is that it erroneously assumes the treatment provided on September 7, 2011 is conclusively adequate under the Eighth Amendment. This assumption is not true; rather, the mere fact Plaintiff received "some" treatment does not conclusively resolve the issue. *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). Plaintiff still may prevail if he shows Defendant Ward (1) had knowledge of a medical condition creating a substantial risk of serious harm, and (2) failed to take reasonable measures to abate that risk. *Rahija*, 114 F.3d at 787. Knowledge may be proved by evidence of surrounding circumstances, *Spruce v. Sargent*, 149 F.3d

783, 786 (8th Cir. 1998), and an inference of knowledge may be may based on the very fact the risk was obvious. *Ambrose v. Young*, 474 F.3d 1070, 1076-77 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Additionally, whether the reasonableness of measures taken is a factual determination viewed in light of surrounding circumstances. *See Cummings v. Caspari*, 821 F. Supp. 1291, 1294 (E.D. Mo. 1993) ("[T]he actions taken by defendants in attending to plaintiff's medical needs were well within reasonable standards of medical care under the circumstances and do not constitute deliberate indifference. No genuine issue of material fact exists on this claim.").

Thus, keeping in mind the courts' general reluctance to constitutionalize a particular standard of healthcare, *Marksberry*, 173 F.3d 855, 1999 WL 98533, at *2 (quoting *Westlake*, 537 F.2d at 860 n. 5), the Court turns to address whether Defendant Ward has met her burden of showing the absence of any evidence that she failed to take reasonable measures to abate a known risk of substantial harm.

First, the Court concludes genuine disputes of material fact remain as to whether Defendant Ward had knowledge of a medical condition creating a substantial risk of serious harm. As to this element, Defendant Ward has met her initial summary judgment burden, as she has set forth evidence that Plaintiff ambulated by himself when she examined him on September 12, 2012, and Defendant Cabrera avers the fracture was not evident upon visual inspection.[10] In rebuttal, however, Plaintiff has set forth specific references to the record that create a genuine dispute of material fact. Specifically, Plaintiff has offered affidavits describing his injuries as evident to a layperson and asserting his foot "was dangling" and "just hung there." [ECF Nos. 40-19 at ¶ 4, 40-18 at ¶ 7].

---

[10]In the Memorandum in Support of Defendants' Motion for Summary Judgment, Defendant Ward also states "[t]he fracture was not known until the ankle was x-rayed on September 13, 2011." [ECF No 25 at 12]. However, the references to the record that purportedly support this assertion merely establish that the x-rays were conducted and a diagnosis was subsequently obtained. [ECF No. 26 at ¶¶ 16-18].

Viewing the evidence in the light most favorable to Plaintiff, the Court finds a reasonable jury could make an inference of knowledge based on the very fact that the risk was obvious. *Ambrose*, 474 F.3d at 1076-77 (quoting *Brennan*, 511 U.S. at 835).

Therefore, to prevail at the summary judgment stage, Defendant Ward must show that no genuine dispute of material fact exists as to whether she took reasonable measures to abate the medical condition. Defendants cite two cases instructive on this issue. First, in *Jenkins v. County of Hennepin, Minnesota*, the plaintiff suffered a broken jaw. 557 F.3d 628, 630 (8th Cir. 2009). The plaintiff sued a medical supervisor, who decided to order an x-ray in "a day or two." *Id*. at 632. The plaintiff set forth evidence that a nurse had communicated to the supervisor "her impression that the situation was urgent," and that the supervisor knew the plaintiff could not open his jaw, chew, or blow his nose. *Id.* Even so, the Eighth Circuit concluded the supervisor's decision to wait "a day or two" did not constitute deliberate indifference. *Id.* The Eighth Circuit explained the "decision to briefly postpone an X-ray (ultimately for less than twenty-four hours) reflects a medical judgment that [the plaintiff's] injury, though possibly serious, was not urgent." *Id.*

In a second case, *Johnson v. Hamilton*, the plaintiff injured his finger on May 2, 2000. 452 F.3d 967, 971 (8th Cir. 2006). On May 8, 2000, the plaintiff submitted his first complaint regarding this injury, and, on May 17, 2000, a nurse examined him, provided ibuprofen, and referred him to a physician.[11] *Id.* The nurse told the plaintiff that, based on the length of time the injury had exhibited swelling, he likely had a fracture in his finger. *Id.* The plaintiff submitted an additional medical request on June 18, 2000, and a physician examined him the same day. *Id.* The physician ordered an x-ray, prescribed additional pain medication, and instructed the plaintiff to follow up in

---

[11]The *Hamilton* opinion does not state whether this referral ever resulted in an actual examination by a physician.

two weeks. *Id.* The x-ray was taken July 3, 2000 and revealed a fracture in the plaintiff's finger. *Id.* The physician then referred the plaintiff to a specialist, who assumed care for the remainder of Plaintiff's medical needs. *Id.* Based on these facts, the Eighth Circuit found no evidence of deliberate indifference. *Id.* at 973. Although "there was a delay of a month between [the nurse's] tentative diagnosis that [the plaintiff's] finger was fractured and the date [the plaintiff's] hand was x-rayed," the court concluded the plaintiff had presented no evidence "that this delay was the result of anything other than negligence."[12] *Id.*

The Court concludes that *Jenkins* and *Hamilton*, while instructive, are distinguishable to the instant case. The instant case's surrounding circumstances – which are substantially unlike those in *Jenkins* and *Hamilton* – affect what constitutes "reasonable measures." *See Caspari*, 821 F. Supp. at 1294. Here, Plaintiff has set forth evidence that his foot "was dangling" and "just hung there." No similar allegations as to the severity and obviousness of the injury were mentioned in *Hamilton*, and although the plaintiff in *Jenkins* suffered a severe injury, the delay in health care in that case was "ultimately for less than twenty-four hours." 557 F.3d at 632. In contrast, Plaintiff has sufficiently alleged Defendant Ward waited five days before referring him to a physician. The Court acknowledges the one-month delay in *Hamilton* exceeds the five-day delay for which Defendant Ward was allegedly responsible. However, the Court finds the drastic difference in the severity of the alleged injury warrants a different outcome here.

Thus, the Court concludes Plaintiff has sufficiently alleged more than mere negligence. "[I]t is commonly known that an obviously fractured limb requires immobilization and stablization,

---

[12]In a separate concurrence, Judge Lay expressed his belief that the one-month delay, "coupled with the fact that [the plaintiff] fractured his hand during a fight with prison guards, provides enough evidence from which a reasonable jury could infer that [the nurse] failed to take appropriate action to treat [the plaintiff's] hand in retaliation for his earlier altercation with prison officials." *Id.* at 974 (Lay, J., concurring).

particularly before a person is moved, and that failure to splint or otherwise immobilize a fractured limb puts the injured person at risk for further injury and increased pain." *Croft v. Hampton*, 286 Fed. Appx. 955, 956 (8th Cir. 2008). Given the genuine dispute of fact as to whether Plaintiff's foot "was dangling" and "just hung there," the Court cannot agree that the provision of an Ace wrap, crutches, aspirin, and an ice bag conclusively constituted "reasonable measures." Rather, "the obvious inadequacy of a response to a risk may support an inference that the [prison official] recognized the inappropriateness of his conduct." *Krout v. Goemmer*, 53 F.3d 557, 567 (8th Cir. 2009). Accordingly, summary judgment is denied as to Defendant Ward.[13]

    2.    *Defendant Cabrera*

Defendant Cabrera contends Plaintiff cannot establish he acted with deliberate indifference, because he provided treatment for Plaintiff's initial injury, and Plaintiff has not offered verifying medical evidence of his purported nerve damage. Plaintiff responds Defendant Cabrera should have authorized emergency surgery on Plaintiff's foot, and he has refused to allow Plaintiff to seek treatment for nerve damage.[14]

Viewing the record in the light most favorable to Plaintiff, the Court concludes there is no evidence that Defendant Cabrera acted with deliberate indifference to Plaintiff's broken bone. Admittedly, a reasonable jury could make an inference that Defendant Cabrera knew of a substantial

---

[13]Defendant Ward has not addressed whether she acted with deliberate indifference to Plaintiff's purported nerve damage. Although she states Plaintiff's medical records reflect she only provided care to Plaintiff on September 12, 2011, Plaintiff correctly points out she also saw him on September 26, 2011 and December 12, 2011. Accordingly, to the extent Defendant Ward moves for summary judgment on this issue, her motion is denied.

[14]Plaintiff also contends Defendant Cabrera refused to give Plaintiff orthopedic shoes after the surgery. To the extent this is true, the Court finds it fails to amount to a violation of the Eighth Amendment. At worst, such a decision would constitute medical negligence, not deliberate indifference to a serious medical need.

risk of serious harm as of September 12, 2011 – the date on which he first observed Plaintiff's injury. However, Defendant Cabrera has conclusively shown he took reasonable measures to abate such risk. The undisputed facts establish that on September 12, 2011, Defendant Cabrera examined Plaintiff and ordered anti-inflammatory medication, a wheelchair, a lower bunk, and an x-ray. The following day, Defendant Cabrera submitted a referral request so that Plaintiff could see an orthopedic specialist, Dr. Jolly. When Dr. Jolly recommended surgery, Defendant Cabrera recommended the same. Clearly, Defendant Cabrera provided medical treatment for Plaintiff's broken bone, and Plaintiff's assertion that Defendant Cabrera should have ordered emergency surgery on September 12, 2011 fails to amount to a violation of the Eighth Amendment. Thus, Defendant Cabrera's pre-surgery conduct undisputedly failed to constitute deliberate indifference.

Regarding Plaintiff's alleged nerve damage, however, it is undisputed that Defendant Cabrera has not provided any treatment. Notwithstanding this fact, Defendant Cabrera argues he is entitled to judgment as a matter of law, because "no one ever told [Plaintiff] that he required evaluation or care from a neurologist." [ECF No. 25 at 9]. Additionally, Defendant Cabrera states Plaintiff has not retained an expert in this matter. Essentially, Defendant Cabrera argues Plaintiff has failed to offer verifying medical evidence of his need for treatment.

However, as previously explained, this line of reasoning does not apply where a medical condition is obvious to a layperson, rendering verifying medical evidence unnecessary. *Schaub*, 638 F.3d at 919. Here, Plaintiff has provided affidavits describing his purported nerve pain as obvious to a layperson, in that his foot makes involuntary jerking movements. Defendant Cabrera has not met his burden, as the moving party, of either undisputedly refuting these allegations or establishing he did not deliberately disregard a substantial risk of serious harm. Moreover, Plaintiff has set forth affirmative evidence of deliberate indifference; as supported by his handwritten notes, Plaintiff

alleges Defendant Cabrera said that he "is not concerned with [Plaintiff's] comfort or pain," and that Plaintiff's surgical boot cost five hundred dollars. [ECF No. 40-6 at 3-4]. These statements give rise to a reasonable inference that Defendant Cabrera acted with deliberate indifference, rather than mere negligence. In any event, the Court notes the logical fallacy in requiring Plaintiff to submit verifying medical evidence of nerve damage, while he simultaneously alleges he is being unconstitutionally denied any medical evaluation for such damage. Accordingly, the Court will deny summary judgment as to the allegation that Defendant Cabrera acted with deliberate indifference toward Plaintiff's purported nerve damage.

### 3. Defendant Bynum

Defendant Bynum argues he is entitled to summary judgment in his favor, because no genuine dispute of fact exists as to whether he acted with deliberate indifference. Defendant Bynum contends, aside from approving the referral request for Plaintiff's surgery, he played no role in any of the events at issue – either before or after Plaintiff's surgery.

Upon review of the record, the Court finds Defendant Bynum has offered specific references to the record that support his position. Plaintiff's medical records indicate Defendant Bynum approved the referral request for the surgery on September 19, 2011. The record is devoid of any evidence establishing Defendant Bynum deliberately disregarded a substantial risk of serious harm.

In response, Plaintiff alleges Defendant Bynum "turned a blind eye" to Plaintiff's medical needs and authorized the allegedly unconstitutional acts of other NCC medical employees. Plaintiff asserts Defendant Bynum had knowledge of Plaintiff's broken bone several days before he approved the surgery. However, aside from his own verified complaint and affidavit, Plaintiff has failed to set forth any specific references to the record establishing this assertion. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits[,]" and Plaintiff has failed

to set forth sufficiently probative evidence that would permit a finding in his favor as to Defendant Bynum. *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). Accordingly, the Court will grant summary judgment as to the allegations against Defendant Bynum.

####    4.    *Defendants Campbell and Bredeman*

Defendants Campbell and Bredeman argue they lacked any personal involvement in Plaintiff's case, and the Court should therefore grant summary judgment in their favor. The Court agrees that the record lacks any evidence these two defendants acted with deliberate indifference toward Plaintiff either pre-surgery or post-surgery. Citing his own affidavit and verified complaint, Plaintiff alleges Defendants Campbell and Bredeman played supervisory roles and willfully disregarded the purportedly unconstitutional actions of NCC medical staff. However, Plaintiff has failed to offer sufficiently probative evidence of deliberate indifference. *Conolly*, 457 F.3d at 876. Therefore, the Court will grant summary judgment in favor of Defendants Campbell and Bredeman.

####    5.    *Defendant Perkins*

Defendant Perkins argues the Court should grant summary judgment in her favor, because she did not personally provide any medical care to Plaintiff. Additionally, Defendant Perkins asserts she did not direct or authorize any medical care, or make any other decisions relating to Plaintiff's treatment. Defendant Perkins claims her response to Plaintiff's IRR constitutes her only role in this case, and Plaintiff has therefore failed to set forth any evidence establishing she knowingly disregarded a substantial risk of serious harm.

Plaintiff responds that Defendant Perkins had authority, but refused, to authorize emergency surgery on September 16, 2011. Plaintiff contends, even though Dr. Jolly wanted surgery performed that day, Defendant Perkins denied the request solely to avoid extra charges for performing surgery on an emergency basis.

Based on the foregoing, the Court finds there exists a genuine dispute of material fact as to whether Defendant Perkins acted with deliberate indifference. Plaintiff has established a factual dispute as to whether Defendant Perkins denied emergency surgery on September 16, 2011.[15] Additionally, Plaintiff has offered evidence the Dr. Jolly communicated the urgency of Plaintiff's medical condition, and that Plaintiff's did not undergo surgery until four days later.

The Court agrees with Plaintiff that this situation bears significant similarities to *Croft v. Hampton*, 286 Fed. Appx. 955 (8th Cir. 2008). In *Croft*, the plaintiff suffered an "obviously fractured limb," and an emergency room physician recommended immediate transfer to another hospital for orthopedic services. *Id.* at 956. The defendant-physician, "who had not evaluated [the plaintiff] or viewed the x-rays, refused to approve the transfer, and directed that [the plaintiff] be splinted and returned to the prison's transitional care unit[.]" *Id.* The plaintiff did not see an orthopedic surgeon until close to seventy-two hours after the plaintiff was injured. *Id.* Based on these facts, the Eighth Circuit reversed the district court's grant of summary judgment on the plaintiff's claim of deliberate indifference. *Id.* The court stated the record "raise[d] trialworthy issues as to whether [the physician] . . . exercise[d] independent medical judgment, or whether his decision fell so far below the reasonable standard of care as to amount to deliberate indifference." *Id.*

Similarly, here, Plaintiff has offered evidence suggesting Defendant Perkins denied immediate surgery, even though Dr. Jolly communicated the urgency of the Plaintiff's medical needs. Like the physician in *Croft*, Defendant Perkins has offered no evidence she evaluated the patient or his x-rays before denying treatment. In fact, while the Eighth Circuit expressed concern

---

[15]Plaintiff's handwritten notes state Defendant Perkins denied the surgery on September 16, 2011. [ECF No. 40-6 at 2].

toward the seventy-two-hour delay in orthopedic care in *Croft*, in the instant case, Plaintiff undisputedly waited thirteen days from the date of his injury to the date of his surgery. Under this set of circumstances, the Court cannot conclusively find a lack of deliberate indifference. Summary judgment is denied with respect to Defendant Perkins.

6.      *Defendant Dallas*

Defendant Dallas contends Plaintiff has failed to set forth any evidence suggesting she acted with deliberate indifference. Specifically, Defendant Dallas contends Plaintiff accuses her of refusing to clean his surgical wrap and boot, and, even accepting this as true, it fails to amount to knowing disregard of a substantial risk of harm, particularly because Plaintiff admits Defendant Dallas readjusted his surgical boot for him.

The Court agrees. Such allegations do not amount to deliberate indifference. At worst, they constitute medical negligence.[16] Defendant Dallas has met her initial burden of establishing the absence of any evidence suggesting she deliberately disregarded a substantial risk of serious harm.

In rebuttal, Plaintiff responds that Defendant Dallas falsified his records during his stay in TCU, unjustifiably deprived him of his prescribed pain medication, and lied to other NCC medical staff about Plaintiff's condition in order to effectuate a premature discharge from TCU. However, aside from his own affidavit, Plaintiff offers no specific references to the record suggesting Defendant Dallas engaged in the alleged deceitful acts,[17] and "a properly supported motion for

---

[16]There is no evidence in the record suggesting Defendant Dallas committed medical negligence.

[17]Additionally, the Court notes the verified complaint fails to allege any of these facts. Rather, regarding Defendant Dallas, the verified complaint only alleges she "looked at [Plaintiff's] bloody leg and foot and refused to clean the blood, change the bandages and refused to go and get the physician on shift." [ECF No. 40-2 at ¶ 32].

summary judgment is not defeated by self-serving affidavits." *Conolly*, 457 F.3d at 876. Accordingly, the Court will grant summary judgment in favor of Defendant Dallas.

### C.    *Unconstitutional Policies, Customs, and Practices*

Defendant Corizon contends it is entitled to summary judgment in its favor, because Plaintiff has failed to offer any evidence establishing it maintained a policy, custom, or official practice that inflicted actionable injury. When a private corporation acts under color of state law, it will only be held liable under 42 U.S.C. § 1983 for unconstitutional policies, customs, or actions by those who represent official policies. *Hamilton*, 452 F.3d at 973; *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993). "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts actionable injury under § 1983." *Sanders*, 984 F.2d at 976. A plaintiff must (1) "adduc[e] evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct[,]" and (2) "show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." *Jenkins*, 557 F.3d at 634 (internal quotations omitted). "From this standard it follows that liability for an unconstitutional custom cannot arise from a single act." *Id.* (internal quotations omitted).

The Court finds Defendant Corizon is entitled to summary judgment in its favor. Defendant Corizon has demonstrated the record lacks any evidence that it maintained unconstitutional policies, customs, or actions by those who represent official policies. The record lacks any "evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct" to support Plaintiff's allegations that Defendant Corizon habitually denies medical treatment to inmates solely on the basis of cost. *Id.*

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 24] is **GRANTED, in part, and DENIED, in part**. Summary judgment is granted as to Defendants Gary Campbell, Thomas Bredeman, Carl Bynum, Barbara Dallas and Corizon, Inc. Summary judgment is denied as to Defendants Tomas Cabrera, Dennece Ward and Jill Perkins.

Dated this  13th  day of November, 2013.


_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE